UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 2:10CR10 PPS |
| SCOTT ADKINS, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Scott Adkins is charged with knowingly receiving child pornography, and he seeks the suppression of photographic material obtained from his computer during the search of his residence. The government claims that the search of the computer was done only after obtaining Adkins' consent. Adkins claims that his consent was limited to a search for evidence of drug dealing, not evidence of child pornography. I conducted an evidentiary hearing to resolve the factual dispute, and because I find that Adkins did not limit the scope of his consent, his motion to suppress is denied.

**Factual Background**

After making a controlled delivery of a package containing heroin, agents of Immigration and Customs Enforcement ("ICE") executed a search warrant at the residence of defendant Scott Adkins. The search warrant authorized a search of the premises for evidence of controlled substances offenses, including the search of computers and their hard drives and memory, storage media and any other electronic devices capable of storing information relating to the sale, delivery, or production of controlled substances. The warrant also authorized the search of

1

photographs, including still photos, video tapes and films, in particular photographs of assets or controlled substances.

Once they were inside the house, agents told Adkins and Nathaniel Jordan that they were under arrest on a heroin charge.[1] Adkins was read his Miranda rights and his statement was taken. ICE Special Agents Terry McCabe and Jeff Thier were with Adkins in Jordan's bedroom. Adkins reviewed a copy of the warrant and asked no questions. After Adkins mentioned that he paid rent to live in the house, and after a cell phone belonging to Adkins was heard ringing in his basement bedroom, McCabe asked Adkins if he would willing to sign a Consent to Search form for his "bedroom in basement and [his] Nextel phone." With respect to the search of the bedroom and the telephone, McCabe made no representation as to anything in particular he was searching for. I discredit Adkins' contrary testimony that McCabe said that the agents wanted permission to search the cell phone for text messages sent from the phone, and that he only signed the consent form because he had no problem with that narrow request. Adkins reviewed the form and asked no questions before signing the form. Adkins displayed no hesitation or ambiguity about signing the form and did not indicate any limitations.

After obtaining Adkins' consent, Special Agent Liam O'Neill went into Adkins' basement bedroom and saw a slew of DVDs on the bed, recognizable as pornography from the pictures on their cases. O'Neill went to McCabe and, out of Adkins' hearing, suggested the agents might want to have a look on the computers that were also found in the room. Because of the numerous pornographic DVDs found on Adkins' bed, O'Neill suspected that they might find

---

[1] In a separate case arising out of the same events, a jury has found Adkins and Jordan guilty of possession with intent to distribute 100 or more grams of heroin and of unlawfully possessing a firearm after having been convicted of a felony.

child pornography on the computers. So McCabe returned to Adkins for the purpose of seeing if he would also consent to the search of the computers. Agent McCabe produced another Consent to Search form and filled it out to specifically identify the two computers that they sought permission to search. Adkins read the form, asked no questions, and signed it. McCabe testified that he made no representations as to what the computers would be searched for, and Adkins did not ask. McCabe testified that Adkins did not indicate in any way that he was limiting his consent to matters relating to a drug investigation or in any other way limiting his consent to search the computers. I discredit Adkins' contrary testimony that McCabe told him they wanted to look at the computers for e-mails sent to or from "Sam," whom Adkins described as Nathaniel Jordan's "dope man."

McCabe subsequently learned that there were external hard drives and media devices also found in the basement bedroom (as well as the two computers). So he presented Adkins with yet another Consent to Search form, which Adkins signed without hesitation, consenting to a search of his "media drivers, Hard drives, storage drives." Again, McCabe gave no indication to Adkins what they were searching for, and Adkins did not ask. Adkins' testimony with respect to this third consent form indicated that McCabe made no representation about what would be looked for on the storage drives, and that Adkins had no problem with granting the consent because he believed most of the storage devices were blank.

Each of these three Consent to Search forms was executed prior to agents' further search of the identified property. Special Agent O'Neill believed Adkins' consent was necessary for a lawful search of the computers, and O'Neill did not initiate any search until he actually viewed the signed consent form. At that point, O'Neill viewed the directory of a folder containing

media files and observed multiple file titles suggesting they contained child pornography. Although unable at the suppression hearing to remember the exact language, O'Neill believed they may have contained suggestive language combined with numeric references which he took to signify ages of children portrayed in the files. O'Neill opened such a file and watched several seconds of a film clip of a boy and girl, who appeared younger than 18, having intercourse. O'Neill looked at two more files, also with titles suggestive of child pornography, and both of those appeared to contain child pornography as well.

After O'Neill told McCabe that there was child pornography on one of the computers, McCabe told O'Neill to call ICE's cyber-crimes group. O'Neill contacted Senior Special Agent Robert Butterfield, a computer forensics specialist with ICE's cyber-crimes unit. At Butterfield's direction, O'Neill stopped searching the computer files, checked the laptop for encryption devices and then unplugged both computers to be transported to the cyber-crimes unit for a proper forensic examination. The next day Butterfield conducted a preview, selecting several files based on titles suggestive of child pornography. As had O'Neill, Butterfield viewed several files for a few seconds each and saw two video clips of what he believed to be child pornography. The evidence at that time was stored for later forensic examination.

The full blown forensic examination did not occur until after a second search warrant was obtained roughly five months later. Based on what Agents O'Neill and Butterfield saw in the files they previewed, ICE agents obtained a separate search warrant specifically to search for child pornography on the custom-built desktop computer and a Seagate hard drive found in Adkins' bedroom.

**Discussion**

Warrantless searches based on consent are permissible. *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009); *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). This is because "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248 , 250-51 (1991).

The government bears the burden of proving that consent is freely given. *James*, 571 F.3d at 713, 714; *Garcia*, 897 F.2d at 1419. This determination is made based on the totality of the circumstances surrounding the consent. *United States v. Raibley*, 243 F.3d 1069,1077 (7th Cir. 2001). Factors in assessing voluntariness include, but are not limited to, the person's age, intelligence, education, and language ability. *Id.* at 1075-76. The consent may be express or implied, but need not be knowing and intelligent, and may be given unintentionally and without knowledge of the right to refuse consent. *Schneckloth*, 412 U.S. at 235-36; *United States v. Saadeh*, 61 F.3d 510, 518 (7th Cir. 1995) (consent to search voluntary even though suspect was not informed of right to refuse consent).

Adkins does not contend that he was coerced into signing the consents or otherwise raise any challenge to the voluntariness of the consents. The issue instead is the *scope* of the consents. "A suspect may of course delimit as he chooses the scope of the search to which he consents." *Florida v. Jimeno*, 500 U.S. 248, 252 (1991). A consensual search is reasonable under the Fourth Amendment only if it remains within the scope of the consent. *United States v. Jackson*, 598 F.3d 340, 348 (7th Cir. 2010). Whether the search remained within the boundaries of the

consent is a question of fact to be determined from the totality of all the circumstances. *Id*.; *United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994) (citations omitted).

The standard for determining the scope of consent under the Fourth Amendment is that of "objective" reasonableness, namely, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251; *United States v. Wesela*, 223 F.3d 656, 661 (7th Cir. 2000); *Torres*, 32 F.3d at 231. This standard requires consideration "beyond the language of the consent itself, to the overall context, which necessarily encompasses contemporaneous police statements and actions." *United States v. Turner*, 169 F.3d 84, 87 (1st Cir. 1999). Furthermore, courts are entitled to view a defendant's conduct to help determine the scope of a consensual search. *United States v. Maldonado*, 38 F.3d 936 (7th Cir. 1994). But it is the defendant's burden to limit the scope of consent. *United States v. Patterson*, 97 F.3d 192, 195 (7th Cir.1996); *United States v. Stribling*, 94 F.3d 321, 324 (7th Cir. 1996); *United States v. Maldonado*, 38 F.3d 936, 941 (7th Cir. 1994).

Adkins' written motion argues that once the agents discovered a photo of child pornography, an additional search warrant was required for further searches of the computers for similar materials, because neither his consent nor the search warrant the agents already had were broad enough to authorize further searching for pornographic material. At the evidentiary hearing, Adkins contended that he only gave consent to search for evidence of drugs, and that, after the discovery of the first image containing child pornography, the further search of the computer exceeded the scope of that consent.

Critical to Adkins' position is a credibility determination in his favor. He claims that Agent McCabe, when requesting his consent to search the basement and the phone, and again

upon asking for consent to search the computers, said that all he was looking for was text messages and e-mails involving narcotics trafficking. I find McCabe's contrary testimony more credible. McCabe credibly testified that he made no such representations to Adkins about what was to be looked at, or looked for, when the phone, computers and computer storage devices were to be searched. And even Adkins does not contend that McCabe made any such potentially limiting statement with respect to the third consent – the one aimed at the computer storage devices.

But, in any event, as I have just stated, I do not find Adkins' testimony credible that McCabe made such statements earlier as to both the phone and computers. First of all, the search warrant that the agents had in hand already authorized the search of the phone, the computers and the computer storage devices for evidence relating to narcotics. Why would McCabe ask for permission to search a computer for drug evidence when he already had the permission to do just that through the warrant he had in hand? No separate consents would have been necessary for that limited purpose, and I do not believe – and I do not find – that McCabe expressed such an unnecessary limitation on the consents he requested of Adkins. My credibility determination is further based on my consideration of the demeanor and manner of the two witnesses as their testimony was given, the interests and bias each may have for giving the testimony in question, and the reasonableness of each witness's overall testimony – and the testimony on this particular point – in light of all the evidence in the case.

On these factual findings, Adkins' motion to suppress fails because the express written consents he gave for the search of the computers and their stored files were broad and unlimited, and certainly contained no limitation making the agents' review of the ".jpg" image files beyond

their scope. Neither McCabe nor any other agent made any representation to Adkins justifying any belief that the scope of his consent was limited to a particular kind of evidence.

Adkins offers no argument, and the evidence suggests no basis, for a conclusion that by his own conduct or words Adkins sought to clarify or limit the scope of the three general consents he gave. *United States v. Berke*, 930 F.3d 1219, 1223 (7th Cir. 1991) (defendant's failure to limit or withdraw his consent after the officers commenced the search suggests that the officers acted within the scope of consent). Adkins made no statements expressing any limitation on the consent he was giving. I note that this is true even on Adkins' version of the facts. He did not testify that he himself ever said anything to express any boundaries on the consent he was giving. His claimed understanding as to the limited scope of the consent was entirely based on what McCabe allegedly said to him.

And Adkins' own subjective understanding of the limits of his consent (even if it were supported by the evidence, which it is not, given my factual and credibility determinations) is not the pertinent yardstick. What is objectively reasonable in all the circumstances is what determines the scope of consent. *United States v. Norwood*, 333 Fed.Appx. 97, 99 (7th Cir. 2009) ["[I]t would be frivolous to pursue the argument concerning the scope of consent because it is determined not by Norwood's understanding of the agreement, but that of a reasonable person witnessing the interaction between Norwood and the troopers."].

Additional icing on the cake is the fact that, even though the government had Adkins' consent to search the computers and their storage devices, after limited previews finding files containing child pornography, the government sought and obtained a separate search warrant specifically authorizing the search of the desktop computer and two hard drives for material

8

containing child pornography. Adkins' written motion fails to acknowledge that the second warrant was ever obtained, instead stating twice that "agents failed to secure an additional search warrant." [DE 11 at p.2; DE 12 at p.4].

Nothing in *United States v. Dichiarinte*, 445 F.2d 126 (7th Cir. 1971) mandates a different result. *Dichiarinte* cautions that where consent to search is limited, or is obtained on agents' representations that they intend to look only for certain items, the consent obtained can't be used to conduct a "general exploratory search." *Id*. at 129. But *Dichiarinte* involved an entirely verbal consent referring only to narcotics, and when the agents started reading receipts and other documents, the subject tried to call a halt but the agents wouldn't stop. Here we have written consent, the express scope of which covers the items searched. Unlike *Dichiarinte*, Adkins failed to show that there was particular conversation or conduct between the agents and Adkins that narrowed the otherwise broad authorization given in the written consents.

The fact that O'Neill and McCabe desired consent to search the computers so as to look for child pornography rather than (or in addition to) evidence of drug crimes, does not affect the analysis. The police do not need any reason to ask for permission to search – let alone a good reason. *United States v. Carter*, 573 F.3d 418, 427 (7th Cir. 2009). Instead, the officers' "motivation is essentially irrelevant because the person asked can always refuse to grant consent and stop the search." *Id*. Stated another way: "[t]he fact that an officer had actual suspicion, however obtained, cannot render invalid a consent for which the officer did not need any suspicion at all to request." *United States v. Liss*, 103 F.3d 617, 621 (7th Cir. 1997).

Adkins relies on *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999), but it doesn't get him very far. In *Carey*, a cocaine investigation led to an arrest warrant and during the

9

execution of the arrest warrant, the Defendant gave verbal consent to search his apartment. He later gave written consent to a search of the "premises and property" of his apartment, and the seizure of property "essential in the proof of the commission of any crime" in violation of federal law. *Carey*, 172 F.3d at 1270. The agents seized three types of drugs and computers (for forfeiture or evidence of drug dealing), and then got a warrant for search of the files for "documentary evidence pertaining to the sale and distribution of controlled substances." *Id.* The Tenth Circuit, distinguishing between seizure of the computer itself and the opening of particular computer files, decided that the seizure of .jpg files containing child pornography was not authorized by the warrant. They found that the plain view doctrine didn't apply beyond the first child porn .jpg opened, because the agent's testimony indicated that thereafter he had an expectation of finding child porn in the .jpg files, rather than narcotics evidence. *Id.* at 1273.

This case is distinguishable from *Carey*. Here the breadth of the original search warrant was not limited to documentary evidence. It was then expanded by the scope of the specific consents Adkins gave. This case is further distinguishable from *Carey* due to the existence of the second search warrant that specifically stated that the evidence to be searched for was child pornography.

Furthermore, the *Carey* opinion itself noted how fact-specific and limited it was. And the Seventh Circuit has noted this about *Carey* as well. *See United States v. Mann*, 592 F.3d 779, 783-84 (7th Cir. 2010). Indeed, if Adkins were looking for a Tenth Circuit case similar to this one, it would be *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009), which specifically distinguished *Carey*. In *Burgess* the officer searching the computer files "immediately stopped the preview upon seeing an instance of suspected child pornography and

obtained another warrant to search for pornography." The Tenth Circuit said, "Beyond that obvious and significant difference between this case and *Carey*, it is tempting, as Burgess suggests, to over read *Carey*. But the *Carey* holding was limited. Both the majority and the concurring opinions were careful to warn that the case was fact intense. *Carey*, 172 F.3d at 1276." *Burgess*, 576 F.3d at 1092. Here, as in *Burgess*, while searching the computer with Adkins' consent, the agents previewed only two or three files which appeared to contain child pornography, before ceasing the search until a specific warrant was obtained. Even assuming, as Adkins does, that the second search warrant was constitutionally necessary, Adkins concedes that the first file of child pornography discovered is not subject to suppression. [DE 11 at p.2; DE 12 at p.4]. In my view, Adkins has not articulated a rational legal basis for his conclusion that the preview of two or three files containing child pornography was not constitutionally permissible before seeking the second warrant, though previewing only one would have been. *See Burgess*, 576 F.3d 1078, 1094-95.

My conclusion is further supported by *United States v. Long*, 425 F.3d 482 (7th Cir. 2005). There the Defendant signed a consent to search his office including computer hardware, software, and external media storage. The agents reviewed the computer file contents using Encase diagnostic software and found child porn. The Seventh Circuit made short work of the Defendant's argument that he did not have notice he was consenting to such an intrusive search, finding that the consent form he signed explicitly allowed search of his "office and laptop, with no limitations or qualifications." *Id.* at 487. Similarly here, the two consent forms for the computers and their storage media contain no limitations of any kind.

11

In *United States v. Lemmons*, 282 F.3d 920 (7th Cir. 2002), unlike here, the general written consent to search was limited by the police officer's statements to the defendant expressing what it was the officer would be looking for when he searched the defendant's trailer. As I have found, no such limiting remarks were made in this case. In any event, in *Lemmons*, the defendant by his conduct during the search expanded the boundaries of his consent when he accompanied the officer around the trailer and "started showcasing his photographs as though they were vacation souvenirs." *Id.* at 924-25. The district court there also found that the defendant told the officer he could search his computer (and then turned the computer on for the officer and stood close by, watching without protest as the officer opened files). *Id*. at 925. Although on entirely different fact scenarios, both *Lemmons* (by his conduct) and Adkins (by the series of consents he granted) are cases of "evolving consent" by a calm and cooperative subject. *Id.* at 926.

The parties have not cited and I have not found a case holding that law enforcement is required to explain what it is they are looking *for* when they ask permission to search a particular place. At the hearing, when asked, defense counsel took the position that, when asking for consent to search, agents must disclose what they are looking for, because otherwise they take away from the subject the right to withhold or limit the consent. It is true that search warrants must describe with sufficient particularity both the places to be searched and the things to be seized. *Mann*, 592 F.3d at 782, citing *Marron v. United States*, 275 U.S. 192, 196 (1927). But consent searches are different, because their reasonableness is predicated on the permission of one authorized to voluntarily give it. *Jimeno*, 500 U.S. at 250-51. Just as the Fourth

Amendment does not require an officer to advise a subject of his right to withhold consent, it would not seem to require the agent to be any more specific about the purposes of the search.

### **Conclusion**

General principles, even where simple to state, must be applied to particular facts as found in a particular case, and there are many permutations possible among the factors in the "totality of all the circumstances" which must be considered. Here, in view of the express and unqualified written consent Adkins gave for the search of the computers and storage drives, which expanded the initial warrant's authorization of the search of computers and their stored files as well as photographic material, and in view of the second search warrant specifically authorizing the search of the desktop computer and two hard drives for material containing child pornography, Adkins' **motion to suppress [DE 11] is DENIED**. Adkins has not succeeded in avoiding that result by persuading me as fact-finder that any circumstances or communications in his interactions with the agents support a conclusion that his consents were somehow limited and did not extend to opening the computer files where child pornography was allegedly found.

SO ORDERED.

ENTERED: June 7, 2010.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT