UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 2:10CR10-PPS ) |
| SCOTT ADKINS, | ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Officers investigating a shipment of heroin from Canada to the United States executed a search warrant at Scott Adkins' residence, and during a consent search of his computers discovered a large quantity of child pornography. [PSR, DE 105 at ¶¶20-28.] Adkins entered a plea of guilty in this case to receipt of child pornography, and, in Case No. 2:09CR32, to possession with intent to distribute heroin, as well as being a felon unlawfully in possession of a firearm. Between the two cases, Adkins is serving an aggregate prison term of 210 months and is confined at the Federal Medical Center in Rochester, Minnesota. According to the Bureau of Prisons' Inmate Locator, his projected release date is January 10, 2025. Adkins previously sought compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), and I denied the request in an opinion dated July 21, 2020. [DE 187.] Adkins has returned with a "Supplement" [DE 196] to that motion. I earlier referred to his supplement as a motion for reconsideration of my previous denial of compassionate release [DE 197], but that was a misnomer. It really is a new motion. In either event, the matter is fully briefed and ready for disposition.

The first issue in these types of matters is administrative exhaustion. Before coming to court, a person seeking compassionate release must first request it from the warden of his institution. Adkins has submitted a memorandum dated October 20, 2020 from the warden denying his second administrative request for a reduction in sentence "based on concerns about COVID-19." [DE 196 at 2.] In its response, the government does not challenge Adkins' satisfaction of the administrative exhaustion requirement.

Like the warden, however, I am not persuaded that Adkins demonstrates factual developments that warrant the granting of compassionate release. Adkins' supplement/motion consists of a single paragraph which lacks explanation or discussion of the 70 pages of exhibits filed with it. [DE 196.] This left the government to (reasonably) construe the motion as predicated on an increase in the number of cases of COVID at FMC Rochester, in view of the October 23 "Notice to the FMC Inmate Population" included among Adkins' exhibits. [DE 198 at 2, citing DE 196 at 3.] In its response, the government reported improvement in the prison's COVID statistics, citing the Bureau of Prisons' COVID dashboard, found at www.bop.gov/coronavirus/ (accessed November 24, 2020). As of January 11, 2021, the data reported by the BOP for FMC Rochester show that the situation has worsened significantly, with the confirmed active cases increasing from 3 reported as of November 24 to 65 reported as of January 11, and the number of inmates recovered increasing from 101 to 285. *Id.* (accessed January 11, 2021).

2

As I indicated earlier, Adkins' motion does not articulate the factual developments he contends warrant his request for compassionate release. In his reply, Adkins is more specific, making a number of allegations about the state of the pandemic at FMC Rochester and the prison's attempt (or failure) to appropriately respond. [DE 205 at 3-4.] Adkins' filings are not sworn declarations or submitted under penalty of perjury, and his allegations about the prison's COVID-19 conditions are anecdotal and unsupported by evidence. The government has no opportunity to respond to such specific allegations made for the first time in Adkins' reply.

No specialized knowledge of epidemiology is required to understand that the management of a highly infectious disease with an incubation period of up to 14 days and the possibility of entirely asymptomatic carriers poses an enormous challenge for the Bureau of Prisons. Prison facilities are not designed for social distancing and the BOP's ability to control inmate behavior so as to reduce transmission is extremely limited. Based only on the anecdotal information Adkins has provided, I am not in a position to determine that the prison's handling of the COVID-19 outbreak is unreasonably poor or exposes Adkins to extraordinary risk.

As to that risk, Adkins again argues that his asthma renders him vulnerable to more severe symptoms if he should contract COVID-19. [DE 205 at 3.] What the Centers for Disease Control says is that "[h]aving moderate-to severe asthma might increase your risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#asthm

3

a (accessed January 11, 2011). The CDC's recommendation is that people with asthma "keep [it] under control" by following whatever "Asthma Action Plan" applies to their case. [*Id.*] The record does not provide me a basis for making any determination about the severity of Adkins' asthma, but it does suggest (without any assertion to the contrary by Adkins in his briefing) that his asthma is controlled with the use of an Albuterol inhaler provided to him in prison. [DE 196 AT 66; DE 200 at 2, 24.]

Adkins does not assert, much less support, a claim that his asthma is not well-controlled or is severe. Adkins is housed in a medical facility where he has immediate access to medical care, including care should he become infected with COVID-19. Presumably every inmate at FPC Rochester has a significant health challenge, but the pandemic cannot support releasing all of those inmates, and Adkins does not succeed in showing that he presents unique circumstances that distinguish his case from all others at risk of COVID at FMC Rochester.

The COVID-19 pandemic is a scourge that has imposed great hardship and suffering on millions of people across the world. But it does not warrant the wholesale emptying of all prisons and jails. The special authority granted to sentencing judges by the recent amendment to §3582(c)(1)(A) is quite narrow, and understandably so, because it comes at the cost of truncating the carefully measured term of imprisonment previously imposed, at the expense of all the sentencing factors and goals weighed in determining that sentence. There are many facts and factors about the COVID-19 pandemic that can justly be called "extraordinary and compelling." But the risk of

4

infection, or even of possibly experiencing a severe case, is not necessarily enough to meet that standard given the prevalence of the coronavirus generally at this time.

Adkins cites my decision last summer granting compassionate release to a defendant named Akeem Jackson. *United States v. Jackson*, Case No. 2:18-cr-86-PPS, 2020 WL 3396901 (N.D.Ind. June 19, 2020). No two cases are alike. Each compassionate release petition presents distinct differences between the defendants, their offenses, and their present circumstances. Although both petitioned from prisons in which a serious outbreak of COVID had occurred, Jackson differed significantly from Adkins in terms of criminal history (none versus substantial), culpability for the instant offense (minimal versus full), and the present state of their respiratory health (compromised versus controlled). In Adkins' case, unlike Jackson's, the requested reduction of his sentence would be contrary to important sentencing factors prescribed in §3553(a). To release Adkins now would reduce his sentence by more than 20%, which would not in my judgment reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct and protect the public from further crimes by Adkins.

I am not naive, and I am not unsympathetic to the realities of the pandemic, which are frightening both in and out of institutional settings. But I remain convinced, as I said last time, that "Adkins' fears of possibly contracting the virus, and of possibly experiencing severe complications if he does, are simply not 'extraordinary and compelling' reasons to support his release at this point in time." [DE 187 at 3.]

ACCORDINGLY:

Defendant Scott Adkins' request for compassionate release [DE 196] is DENIED.

SO ORDERED.

ENTERED: January 15, 2021.

                                                /s/   Philip P. Simon
                                                UNITED STATES DISTRICT JUDGE